IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LORNA KELIIPULEOLE, | CIVIL NO. 21-00170 JAO-KJM |
| Plaintiff, | |
| vs. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| MOLOKAI OHANA HEALTH CARE INC. (DBA "MOLOKAI COMMUNITY HEALTH CENTER"), DOE DEFENDANTS 1-20, DOE CORPORATE ENTITIES 1-20, | |
| Defendants. | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Lorna Keliipuleole ("Plaintiff") sues her former employer Molokai Ohana Health Care Inc. ("Defendant") for (1) age discrimination pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623, and Hawaiʻi Revised Statutes ("HRS") § 378-2; (2) retaliation in violation of the Hawaiʻi Whistleblowers' Protection Act ("HWPA"), HRS § 378-62; and (3) unlawful termination in contravention of public policy.  *See* ECF No. 2 at 7–10.

Defendant now moves for summary judgment on all claims ("Motion").  *See* ECF No. 35.

For the following reasons, the Court GRANTS the Motion as to Plaintiff's ADEA claim and declines to exercise supplemental jurisdiction over the remaining state law claims.

## I.    Background

### A.    Facts

Unless otherwise noted, the following facts are undisputed.

Defendant is a community-owned non-profit and the only federally qualified health center on Moloka'i.  ECF No. 36 ¶ 1.  On January 27, 2020, it hired Plaintiff as a Patient Services Associate/Medical Assistant.  *Id.* ¶ 2.  Plaintiff was 53 years old.  *Id.*  Plaintiff's supervisor was Clinical Office Manager Sheries Hana Spencer ("Spencer").  *Id.* ¶ 9.  When Plaintiff was hired, she received the Employee Handbook ("Handbook").  *Id.* ¶ 5; *see* ECF No. 45 at 2 (Plaintiff's admission that she received a November 2019 version of the Handbook); ECF No. 49 ¶ 5.  The Handbook identified conduct that could result in discipline or discharge.  ECF No. 36 ¶ 4.  Early in her tenure, Plaintiff took part in various trainings, including an annual compliance training that purportedly reviewed all of Defendant's policies.  *See id.* ¶ 7.  Plaintiff admits to participating in the training but disputes that it covered all of the policies.  ECF No. 49 ¶ 7.  Similarly, Plaintiff attended a

Medical Assistant workflow training, which Defendant asserts included vaccine administration procedure but Plaintiff says it did not. *See* ECF No. 36 ¶ 8; ECF No. 49 ¶ 8.

Relations between Plaintiff and Spencer were tense. Plaintiff claims that from the time she started working for Defendant, she had to spend a disproportionate amount of time "on the floor" as compared to other employees. *See* ECF No. 45 ¶ 20. Plaintiff identifies Annie Puaʻa ("Puaʻa") and Shalia Jensen ("Jensen") as younger employees who were similarly situated to Plaintiff. *Id.* ¶ 24. Plaintiff further alleges that within a month of starting, Spencer began talking down to Plaintiff in a rude fashion, reprimanding her in front of other employees, and micromanaging her. *Id.* ¶ 21. Spencer also allegedly chastised Plaintiff in front of patients, deprived her of certain work duties, and required her to cover some of Jensen's duties. *See id.* ¶¶ 22, 23, 25, 28. Plaintiff asserts that Spencer did not treat the younger employees in the same way. *See, e.g.*, *id.* ¶¶ 20–29. Defendant challenges Plaintiff's assertions. *See* ECF No. 50 ¶¶ 20–29. Plaintiff also claims that Spencer once told Plaintiff that, "[y]ou all learn differently . . . [Puaʻa] learns faster." ECF No. 45 ¶ 30. Defendant also denies that Spencer made the statement but fails to provide contrary evidence. *See* ECF No. 50 ¶ 30.

The event that catalyzed the bulk of Plaintiff's complaints against Defendant began on August 4, 2020. On that day, Plaintiff administered an expired Hepatitis

A vaccine to two minors.  ECF No. 36 ¶ 10.  Plaintiff claims that before giving the shots, she spoke with Spencer who examined the two doses of the vaccine and directed Plaintiff to administer them.  ECF No. 45 ¶¶ 10–11.  Defendant denies the pre-authorization, ECF No. 50 ¶¶ 10–11, and asserts that Spencer was in a different clinic during the incident, ECF No. 36 ¶ 17.  Regardless, after the incident, Plaintiff informed Spencer that she had given the minors expired doses.  ECF No. 45 ¶ 12; ECF No. 36-22 at 2.  Plaintiff claims that Spencer assured her that she would formally report the incident to Defendant's administration.  ECF No. 45 ¶ 12.  Spencer seems to have begun filling out a paper Incident Reporting Form on August 5, 2020, but did not complete it until September 14, 2020.  *See* ECF No. 36-23 at 3.  But using the paper form contravened Defendant's policies:  Defendant had a computerized incident reporting system, the "RL6."  ECF No. 45 ¶¶ 14, 16; ECF No. 50 ¶¶ 14, 16.  There is also evidence that using the paper Incident Reporting Form was unusual after the implementation of the RL6 system.  *See* ECF No. 45-10 at 14 (CEO's deposition testimony that she had not seen a paper form since the rollout of the electronic reporting system).

Plaintiff states that a few weeks after the expired vaccine incident, she looked in the minors' medical files and noticed there was no record of the minors'

receipt of expired doses.  *See* ECF No. 45 ¶ 32.[1]  In response, on September 2, 2020, Plaintiff filed an RL6 against Spencer for failing to report the expired vaccine incident.  *See id.* ¶32\*; *see also* ECF No. 36-10.  Defendant initiated an investigation after receiving Plaintiff's report about the incident.  *See* ECF No. 36 ¶ 16.  Spencer claims that she had not been able to speak with a representative from the vaccine manufacturer until September 8, 2020.  *See* ECF No. 36 ¶ 12.  After the investigation, Plaintiff and Spencer each received "a record of conversation serving as a verbal warning" for their roles in the expired vaccine incident.  *See* ECF No. 36 ¶ 29.  The investigation found that Plaintiff had violated Medical Assistant workflow procedure and that Spencer had violated Defendant's policy for incident reporting.  *Id.* ¶ 28; ECF No. 36-33 at 2–3.

As part of the investigation into the expired vaccine incident, Plaintiff and Spencer met with Defendant's management on September 3, 2020.  *See* ECF No. 36 ¶ 19; ECF No. 45 ¶ 33; ECF No. 45-11 at 1.  Plaintiff states that she complained to management that Spencer exhibited favoritism toward Jensen and Puaʻa — allowing Jensen to be absent from or report late to work thereby increasing Plaintiff's workload, and providing additional training to Puaʻa.  ECF No. 45 ¶ 33; *see also* ECF No. 45-11 at 1.  Defendant admits that Plaintiff complained of

---

[1]  Plaintiff's concise statement of facts includes two facts numbered 32.  The Court refers to the first as ¶ 32 and the second as ¶ 32\*.

favoritism but notes that Plaintiff never complained of age discrimination.  *See* ECF No. 50 ¶ 33; ECF No. 36 ¶ 21.  Plaintiff concedes she never mentioned age discrimination.  ECF No. 49 ¶ 21.

The day after the meeting, Plaintiff requested leave, citing "hostile work environment" as the reason.  ECF No. 36 ¶ 23.  Defendant granted the leave.  *Id.* ¶ 24.  While on leave, Plaintiff gave Defendant an account of the issues between her and Spencer.  *Id.* ¶ 26.  She did not explicitly mention age discrimination as a problem.  *Id.*; ECF No. 49 ¶ 26.  But she sent an eight-page letter detailing various grievances against Spencer.  *See* ECF No. 45-12 at 5; ECF No. 45-13.  Plaintiff returned to work on September 14, 2020.  ECF No. 36 ¶ 25.

Just a few days later, on September 17, 2020, there was a verbal altercation between Plaintiff and Spencer.  *Id.* ¶ 30.  Plaintiff emailed the CEO about the incident, and the CEO responded that Defendant would conduct a neutral review of the incident.  *See* ECF No. 36-39 at 3; ECF No. 36-42 at 2–3.  Spencer, meanwhile, filed a grievance against Plaintiff regarding the altercation.  ECF No. 36 ¶ 33; ECF No. 36-24; *see also* ECF No. 36-1 at 5 (explaining that handwritten notes on ECF No. 36-24 were not Spencer's).  During the altercation, Spencer apparently noticed that Plaintiff had left her computer screen on and unlocked.  *See* ECF No. 36-24 at 5–6.  Spencer reported this alleged violation of Defendant's HIPAA (Health Insurance Portability and Accountability Act) IT Security Policy.

*See* ECF No. 36 ¶ 35.  Spencer counseled Plaintiff about the violation and issued a written warning.  *Id.* ¶ 36; ECF No. 36-26.  Plaintiff claims she was never notified about the disciplinary action taken.  *See* ECF No. 49 ¶ 45.  The employee signature section on the form is blank.  *See* ECF No. 36-26 at 2.  Spencer claims that Plaintiff received but refused to sign the forms.  *See* ECF No. 36 ¶ 45.

In addition to the alleged HIPAA policy violation, Spencer and others reported Plaintiff for various issues during September and October 2020:

- On September 29, 2020, Spencer reported Plaintiff for two separate vaccine-related incidents whereby she allegedly failed to get written consent from the patient or a guardian.  *See* ECF No. 36 ¶ 39.  One of the incidents occurred that day, but the other occurred on August 20, 2020 and the unsigned form was discovered "by some coincidence."  *See* ECF No. 36-28 at 2, 5. Spencer issued a written warning for the violations.  ECF No. 36-30. Plaintiff claims she never received the warning.  *See* ECF No. 49 ¶ 45.  The employee signature section on the form is blank.  ECF No. 36-30 at 2. Spencer claims that Plaintiff received but refused to sign the forms.  *See* ECF No. 36 ¶ 45.

- On October 2, 2020, Dr. Mark Hoover reported that Plaintiff had stuck herself with a needle.  *See* ECF No. 36 ¶ 41.  The doctor documented that

Spencer had notified him that Plaintiff had stuck herself. *See* ECF No. 36-18 at 2. He verbally discussed the incident with Plaintiff. *Id.*

- On October 12, 2020, Spencer reported that Plaintiff was about to draw a vaccine shot prior to approval from the provider. *See* ECF No. 36 ¶ 42. She wrote Plaintiff up for a Medical Assistant workflow violation. *See* ECF No. 36-32 at 2. Plaintiff claims she was never notified of the disciplinary action taken. *See* ECF No. 49 ¶ 45. The employee signature section on the form is blank. ECF No. 36-32 at 2. Spencer claims that Plaintiff received but refused to sign the forms. *See* ECF No. 36 ¶ 45.

- That same day, Dr. Hoover reported that Plaintiff had contacted him about errors in her medical record that she had found when looking at her own chart (accessing one's own chart violated company policy). *See* ECF No. 36-20 at 2, 5.

By letter dated October 13, 2020, Defendant terminated Plaintiff's employment. *See* ECF No. 36-21 at 2. The letter advised Plaintiff that she was terminated because of the following violations of Defendant's policies: Policy IM-0015: HIPAA IT Security and Compliance; Policy IC-006: Policy for Handling Sharps; Policy 011: Infectious Waste; Policy IC-015: Vaccine Ordering and Inventory Control; Policy CC-021: Well Child Visit; Employee Handbook. *See*

*id.*  The letter specifically cited that Plaintiff had accessed her personal electronic

health record on October 9, 2020.  *Id.*  It also stated:

> In addition to the HIPAA violations, there have been
> several other incidents where you have violated Company
> Policies and Procedures, which are filed against you in our
> incident reporting database.  Said incidents involve
> insubordination; failure to follow clinical processes and
> procedures which have put patient safety at risk, and failure to
> follow clinical process and procedures which have put yourself
> at risk.

*Id.*

## B.   Procedural History

Plaintiff filed her operative First Amended Complaint on April 2, 2021.  *See*

ECF No. 2.  She alleges three counts against Defendant — age discrimination

under both the ADEA and Hawai'i law; a violation of the HWPA; and unlawful

termination in contravention of public policy.  *See id.* at 7–10.  Defendant filed its

Answer on April 29, 2021.  *See* ECF No. 13.

Defendant filed its Motion on January 12, 2022.  *See* ECF No. 35.  Plaintiff

opposed on March 3, 2022.  *See* ECF No. 44.  Defendant replied on March 14,

2022.  *See* ECF No. 47.

## II.   Legal Standard

Summary judgment is appropriate when there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R.

Civ. P. 56(a).  "A party seeking summary judgment bears the initial burden of

informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. *See State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989) (per curiam).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See T.W. Elec.*, 809 F.2d at 630; Fed. R. Civ. P. 56(c). The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec.*, 809 F.2d at 630; *Blue Ocean Pres. Soc'y v. Watkins*, 754 F. Supp. 1450, 1455 (D. Haw. 1991).

If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be

10

entered.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); Fed. R. Civ.

P. 56(e).  There is no genuine issue of fact if the opposing party fails to offer

evidence sufficient to establish the existence of an element essential to that party's

case.  *See Celotex*, 477 U.S. at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960,

964 (9th Cir. 1994); *Blue Ocean*, 754 F. Supp. at 1455.

In considering a motion for summary judgment, "the court's ultimate inquiry

is to determine whether the 'specific facts' set forth by the nonmoving party,

coupled with undisputed background or contextual facts, are such that a rational or

reasonable jury might return a verdict in its favor based on that evidence."  *T.W.

Elec.*, 809 F.2d at 631 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 257

(1986)) (footnote omitted).  Inferences must be drawn in favor of the nonmoving

party.  *See id.*  However, when the opposing party offers no direct evidence of a

material fact, inferences may be drawn only if they are reasonable in light of the

other undisputed background or contextual facts and if they are permissible under

the governing substantive law.  *See id.* at 631–32.  If the factual context makes the

opposing party's claim implausible, that party must come forward with more

persuasive evidence than otherwise necessary to show there is a genuine issue for

trial.  *See Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994) (citing *Cal.

Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468

(9th Cir. 1987).

### III.    Discussion

**A.    ADEA**

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age."  29 U.S.C. § 623(a).  Under the ADEA, a plaintiff may rely on disparate treatment or disparate impact theories of discrimination.  *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609–10 (1993); *Sischo–Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1109 & n.6 (9th Cir. 1991), *superseded by statute on other grounds as recognized by Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1041 (9th Cir. 2005).  A plaintiff may also establish a violation of the ADEA by proving the existence of a hostile work environment.  *See Aoyagi v. Straub Clinic & Hosp., Inc.*, 140 F. Supp. 3d 1043, 1058 (D. Haw. 2015) (citing *Sischo–Nownejad*, 934 F.2d at 1109 (other citations omitted)).   Plaintiff initially asserted disparate treatment and hostile work environment claims but has now abandoned the latter.  *See* ECF No. 44 at 14 n.6.

"Disparate treatment is demonstrated when the employer simply treats some people less favorably than others because of their race, color, religion[,] or other protected characteristics."  *Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802, 811 (9th Cir. 2004) (brackets, internal quotation marks, and citation omitted).  To prove a disparate treatment claim, plaintiffs may rely on either direct or

12

circumstantial evidence of age discrimination. *See id.* at 812. If a plaintiff relies

on circumstantial evidence, courts employ the burden-shifting framework from

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Diaz v. Eagle*

*Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (2008) (citing *Enlow*, 389 F.3d at

812).[2]

> Under this framework, the employee must first establish a prima
> facie case of age discrimination. If the employee has justified a
> presumption of discrimination, the burden shifts to the employer
> to articulate a legitimate, non-discriminatory reason for its
> adverse employment action. If the employer satisfies its burden,
> the employee must then prove that the reason advanced by the
> employer constitutes mere pretext for unlawful discrimination.
> "As a general matter, the plaintiff in an employment
> discrimination action need produce very little evidence in order
> to overcome an employer's motion for summary judgment."

*Id.* (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000))

(quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir.

2000)). To rebut an employer's offer of nondiscriminatory reasons for the adverse

action, an employee must produce "'specific, substantial evidence of pretext.'"

*Coleman*, 232 F.3d at 1282 (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890

(9th Cir. 1994)).

---

[2] Although the Supreme Court "has not definitively decided" whether the
*McDonnell Douglas* framework applies in ADEA cases, *see Gross v. FBL Fin.
Servs., Inc.*, 557 U.S. 167, 175 n.2 (2009), the Ninth Circuit continues to apply it,
*see Shelley v. Geren*, 666 F.3d 599, 607–08 (2012).

To establish the elements of a prima facie ADEA claim, a plaintiff must establish that (1) she is at least 40 years old, (2) was performing her job satisfactorily, (3) suffered an adverse employment action, and (4) was "replaced by a substantially younger employee with equal or inferior qualifications." *Wallis*, 26 F.3d at 891 (citation omitted); *see also Parris v. Wyndham Vacations Resorts, Inc.*, 979 F. Supp. 2d 1069, 1075 (D. Haw. 2013). Regardless of whether a plaintiff relies on direct or circumstantial evidence, she ultimately must prove by a preponderance of the evidence "that age was the 'but-for' cause of the challenged employer decision." *Gross*, 557 U.S. at 177–78 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141–43 (2000)) (footnote omitted).

### 1.    Plaintiff Has Established A Prima Facie Case Of Age Discrimination Under The ADEA

It appears Plaintiff relies on circumstantial evidence at this stage because Plaintiff cites to the *McDonnell Douglas* framework and does not direct the Court to any direct evidence of age discrimination. Thus, the Court addresses whether she has established a prima facie case. In its Motion, Defendant only challenges the second element of Plaintiff's ADEA prima facie case — that she was satisfactorily performing her job, ECF No. 35-1 at 20–22, but the Court will address a few issues pertaining to some of the other elements as well. As an initial matter, though, there is no dispute that Plaintiff is over 40 years old.

14

### a.   The Adverse Employment Actions

In essence, Plaintiff proposes two categories of adverse employment actions, which require different analyses.  The first is the most obvious and is the axiomatic example of an adverse action:  Plaintiff's termination.  But Plaintiff admits that the gravamen of her ADEA claim is that she suffered other adverse employment actions relating to the terms and conditions of her employment.  ECF No. 44 at 17.  Specifically, she asserts that:

- From the date MCHC hired Plaintiff, she was required to spend a disproportionate amount of time "on the floor" compared to similarly situated employees, who were younger than Plaintiff.  PCSF ¶20.

- Approximately a month after Plaintiff started working at MCHC, Spencer began talking down to Plaintiff in a rude fashion, reprimanding Plaintiff in front of other employees, and micro-managing Plaintiff, which Spencer did not do with employees younger than Plaintiff.  PCSF ¶21.

- Spencer would chastise Plaintiff in front of patients, which Spencer did not do with younger employees.  PCSF ¶22.

- Spencer would speak in a condescending manner to Plaintiff but would not speak in that manner to younger employees, including but not limited to, providing Plaintiff with instructions on how to perform certain work duties or depriving Plaintiff of certain work duties.  PCSF ¶23.

- Spencer had Pua'a take over certain job duties from Plaintiff, thereby depriving Plaintiff of previously assigned job duties. PCSF ¶25.

- Spencer notified Pua'a regarding change in workplace procedure without notifying Plaintiff.  PCSF ¶18.

15

- Spencer regularly and consistently provided Jensen with support in managing patients, which Spencer did not do for Plaintiff. PCSF ¶27.

- Spencer would excuse Jensen from certain work duties she no longer wanted to perform, such as, when Jensen expressed that she no longer felt comfortable administering vaccination to children. PCSF ¶28.

- Spencer required Plaintiff to cover Jensen's patients in addition to her own patients without providing Plaintiff with any support in terms of patient management. PCSF ¶29.

*Id.* at 11–12.

Whether each of the above actions constitutes an adverse employment action is unclear. *See Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000) (noting that "mere ostracism" does not constitute an adverse employment action (citation omitted)). But Defendant does not argue that Plaintiff has failed to establish a prima facie case based on lack of an adverse employment action as there is no dispute that Defendant terminated Plaintiff. And there is evidence that some of the other alleged disparate treatment constituted adverse action under the ADEA. *See id.* at 1240 (holding that the Ninth Circuit broadly interprets adverse employment action and that it has "found that a wide array of disadvantageous changes in the workplace constitute adverse employment actions"). For example, in the Title VII context, the Ninth Circuit has "held that assigning more, or more burdensome, work responsibilities, is an adverse employment action." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (citations omitted). Additionally, *Ray*

favorably cited a Title VII case, which held that "transfers of job duties . . . . if proven, would constitute 'adverse employment decisions." *Ray*, 217 F.3d. at 1241 (quoting *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)) (brackets and some internal quotation marks omitted). Plaintiff declares that Spencer both took certain job duties away from Plaintiff, *see* ECF No. 45 ¶ 25, and burdened her with a heavier workload, *see id.* ¶ 29. Thus, Plaintiff has established the second element of her prima facie case.

### b.   Plaintiff's Job Performance

As to the third element, Defendant argues that Plaintiff cannot establish a prima facie case because she was not satisfactorily performing her job. *See* ECF No. 35-1 at 20–22; ECF No. 47 at 7–10. Specifically, Defendant contends that Plaintiff breached Defendant's policies on seven different occasions between August 2020 and Plaintiff's termination in October 2020, *see* ECF No. 35-1 at 15–17, 20–22, and that Plaintiff admits the violations, *see* ECF No. 47 at 8–9. The alleged violations include errors in vaccine administration and accessing confidential medical information. *See* ECF No. 35-1 at 15–17. Nowhere does Plaintiff dispute that any of this conduct occurred. *See* ECF Nos. 45, 49.

But, reading the evidence in the light most favorable to Plaintiff, the Court concludes that there is a factual dispute as to whether Plaintiff satisfactorily performed her job. Plaintiff submitted two letters of recommendation that create a

genuine issue.  The first was from Defendant's CEO and was written on August 28, 2020.  *See* ECF No. 45-16.  It stated that Plaintiff had "been a Medical Assistant for nearly the past year" and had "been responsible for providing timely support and excellent customer service on behalf of patient care."  *Id.* at 1.  It continued that Plaintiff was "highly competent, organized, outgoing, and a great communicator with both patients and her care team."  *Id.*  The CEO "highly recommend[ed]" Plaintiff.  *Id.*  The second letter, from certified family nurse practitioner Dino Akai, was written on August 29, 2020.  *See* ECF No. 45-17.  It stated that Plaintiff was a "quick learner who display[ed] a high level of work ethic, integrity, reliability, and compassion towards her patients."  *Id.* at 1.

Defendant challenges the relevance of these letters of recommendation.  *See* ECF No. 47 at 7–9.  First, Defendant argues that the letters only describe Plaintiff's performance at a single point in time, before the bulk of Plaintiff's reported violations.  *Id.* at 7–8.  While this statement is technically true, it ignores the context of the situation and Defendant's burden on this Motion.  Part of Plaintiff's theory in this case is that Spencer began targeting Plaintiff for alleged policy violations after Plaintiff reported Spencer for her role in the expired vaccine incident on September 2, 2020.  *See* ECF No. 44 at 20.  At a basic level, and interpreting the evidence in the light most favorable to Plaintiff, Plaintiff had no policy violations reported against her and had received two positive letters of

18

recommendation as of September 2, 2020.  Thus, it is clear that there is evidence that she was performing her job satisfactorily on that date.  Only after that date, when she reported her supervisor, did any evidence accumulate that she was failing to perform her job in a satisfactory manner.  Based on that context, the Court finds that a reasonable factfinder could conclude that Plaintiff was performing her job at the same level before and after September 2, 2020, and that the only thing that changed was that Spencer began looking for reasons to write up Plaintiff for violations.

Additionally, there is evidence that some of Plaintiff's violations were relatively minor.  *See Diaz*, 521 F.3d at 1208 (denying summary judgment to employer on job performance prong when employee deficiencies were relatively minor or when supervisor considered employee generally dependable despite infrequent issues).  For example, Spencer's failure to report the expired vaccine incident within 24 hours of its occurrence, could suggest that she did not consider it a pressing matter.  *See* ECF No. 45 ¶ 15; ECF No. 50 ¶ 15.  Further, Plaintiff received "a record of conversation serving as a verbal warning," rather than a written warning or a more serious consequence, for her role in the expired vaccine incident.  *See* ECF No. 36 ¶ 29.  Similarly, Dr. Hoover spoke to Plaintiff about the needle stick incident rather than issue any kind of written warning.  And the rest of

the incidents that did garner written warnings, or termination, only occurred after Plaintiff reported Spencer for the expired vaccine incident on September 2, 2020.

In its Motion, Defendant argues that Plaintiff's access of her personal medical records was sufficient to prove Plaintiff's dissatisfactory job performance. *See* ECF No. 35-1 at 21.  Defendant directs the Court to *Markell v. Kaiser Foundation Health Plan of the Northwest*, No. CV. 08-752-PK, 2009 WL 3334897, at *9 (D. Or. Oct. 15, 2009), *aff'd*, 405 F. App'x 116 (9th Cir. 2010), for the premise that violation of an employer's confidential records policy is clear evidence of unsatisfactory job performance.  *See id.*  But that decision is not binding on the Court and was based on the facts in its record, which are distinguishable from those here.  For example, the plaintiff in that case "made photocopies of the confidential medical records of approximately 25 Kaiser patients, including records of both her own patients and patients treated by other dental hygienists" and "removed the copies from the workplace and brought them to her home."  *Markell*, 2009 WL 3334897, at *3.  These "actions constituted a 'compound' violation of the policy, in that her conduct violated at least four independent provisions of the confidentiality policy."  *Id.* at *9.

Arguably, the evidence in *Markell* demonstrates a more egregious violation. Further, the Ninth Circuit's affirmance is a nonprecedential unpublished disposition that simply remarks that the affidavits of two former employees did

20

"not present circumstances similar enough to allow the district court to find a triable issue of fact as to whether [the plaintiff] was performing her job satisfactorily or to show pretext." *See Markell*, 405 F. App'x at 117.  The circumstances are different here where the alleged violations may be less severe, where Plaintiff presented two letters of recommendation from Defendant's officials that she was performing satisfactorily, and where there is evidence that Spencer was targeting Plaintiff.  Based on the foregoing, the Court concludes there is a genuine dispute about Plaintiff's performance that precludes summary judgment to Defendant on the issue.

### c.    Plaintiff's Replacement And Other Employees

As to the fourth element of a prima facie ADEA case, the Court also finds that a genuine issue of fact exists as to whether Plaintiff's replacement was younger and less qualified.  But the Court concludes that Plaintiff has failed to raise a triable issue as to whether the other employees that she claims were treated differently were similarly situated to Plaintiff.

The fourth element is described differently in different contexts.  In cases where the adverse employment action is a termination, an employee may establish the prima facie element by showing that she was "either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise 'giving rise to an inference of age discrimination.'"  *Diaz*,

521 F.3d at 1207 (quoting *Coleman*, 232 F.3d at 1281) (footnote omitted).  In non-termination cases, an employee must show that "similarly situated individuals outside his protected class were treated more favorably."  *Chuang*, 225 F.3d at 1123 (citation omitted) (Title VII case); *see also Estate of McGough v. Lockheed Martin*, 12 F. App'x 464, 469 (9th Cir. 2001) (ADEA case quoting *Chuang* articulation of prima facie case).  Here, Plaintiff relies on both theories.  She declares that Defendant replaced her with someone who is approximately 30 years old.  *See* ECF No. 45 ¶ 44; ECF No. 45-12 at 5.  And Plaintiff argues that Spencer subjected her to worse treatment than Pua'a and Jensen because Plaintiff was older than them.  *See* ECF No. 44 at 12; ECF No. 45-12 at 5.

### i.      Plaintiff's Replacement

The Court finds that a genuine issue of fact exists as to whether Plaintiff's replacement was younger and less qualified.  Although Defendant only challenged this prong of the prima facie case in its Reply, the Court considers the issue because Plaintiff discussed the element in its Opposition.  And, as defense counsel explained at the hearing, Defendant understood Plaintiff's ADEA claim primarily to rely on a hostile work environment theory before Plaintiff abandoned that theory in its Opposition.  *See* ECF No. 44 at 14 n.6.

As to Plaintiff's replacement, Defendant only denies the fact that the replacement was younger and less qualified because "Plaintiff has cited no

evidence in the record supporting this assertion other than Plaintiff's self-serving declaration." *See* ECF No. 50 ¶ 30.  But Defendant proffers no evidence of its own that the assertion is false.  And, while Plaintiff's declaration is self-serving, "declarations are often self-serving, and this is properly so because the party submitting it would use the declaration to support his or her position." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (citing *SEC v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007)).  Further, although a "district court *can* disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence," *id.* (emphasis added) (citations omitted), the Court declines to do so here because although Plaintiff's declaration is sparse on detail, it is based on her personal knowledge and provides factual content rather than legal conclusions.  *See id.* at 497–98 (accepting uncorroborated self-serving declaration where declaration was based on personal knowledge, was consistent with deposition testimony, and included facts); *Phan*, 500 F.3d at 909–10 (explaining that district court erred by rejecting declarations solely on the grounds they were "uncorroborated and self-serving").  In the absence of any evidence to the contrary, the Court finds that Plaintiff's declaration is sufficient at this point to create a dispute on whether the person that replaced Plaintiff is younger and less qualified. *Cf. Hochroth v. Ally Bank*, 461 F. Supp. 3d 986, 1005–06 (D. Haw. 2020) (Otake,

J.) (rejecting uncorroborated self-serving declaration *where documentary evidence contradicted declaration*).

### ii.    Other Employees

Conversely, the evidence in the record fails to raise a factual question as to whether Jensen and Puaʻa were similarly situated to Plaintiff.  The evidence before the Court shows they were not.  First, the three employees' job titles differed.  For example, Plaintiff was a Patient Services Associate/Medical Assistant, while she refers to Puaʻa as a Patient Services Associate, and Jensen as a Medical Assistant. *See* ECF No. 36-44 at 6–7.  However, Jensen was a "call-in" Medical Assistant. ECF No. 47-2 at 2–3.  The difference in titles suggests distinct primary responsibilities.  Further, at the hearing on the Motion, defense counsel conceded that Jensen's part-time status rendered her not similarly situated to Plaintiff.  *See, e.g.*, *Johnson v. Univ. of Iowa*, 431 F.3d 325, 330 (8th Cir. 2005) ("Generally, part-time employees are not similarly situated to full-time employees." (citation omitted)); *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1155 (7th Cir. 1997) ("[F]ull-time employees are simply not similarly situated to part-time employees.").  Thus, Plaintiff claims that only Puaʻa was similarly situated to her.

The Ninth Circuit has described the similarly situated element as follows: "The employees' roles need not be identical; they must only be similar 'in all material respects.'  Materiality will depend on context and the facts of the case."

24

*Hawn v. Exec. Jet Mgmt., Inc.*,  615 F.3d 1151, 1157 (9th Cir. 2010) (quoting

*Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006)) (other citation omitted).

"Generally, we have determined that 'individuals are similarly situated when they

have similar jobs and display similar conduct.'" *Id.* (quoting *Vasquez v. County of

Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003)).

But Plaintiff's only "evidence" that Pua'a was similarly situated is her bald

conclusion that Pua'a was "similarly situated [to] Plaintiff and had similar job

duties and responsibilities."  ECF No. 45 ¶ 24.  Plaintiff's declaration merely

repeats the same statement.  *See* ECF No. 45-12 at 3.  Whether Pua'a was

"similarly situated" is a legal conclusion rather than a factual assertion based on

personal knowledge.  And, while Plaintiff claims that Spencer had Pua'a take over

certain job duties from Plaintiff, she fails to explain what those duties were, how

they were similar, and why they matter to the instant Motion.  *See* ECF No. 45

¶ 25.  In other words, there is no evidence in the record that gives rise to the

inference that the roles of Plaintiff and Pua'a were similar in all material respects.

The Court, therefore, concludes that Plaintiff has failed to raise a genuine dispute

as to whether Pua'a had similar job duties to Plaintiff.  Further, there is no

evidence in the record that Plaintiff and Pua'a "display[ed] similar conduct."

*Vasquez*, 349 F.3d at 641 (footnote omitted).  As such, Plaintiff has failed to

provide any evidence that the employees she identified were similarly situated to her.

Additionally, even if Pua'a and Plaintiff were similarly situated, their age difference is "presumptively insubstantial" for the fourth prong of a prima facie ADEA case.  *See France v. Johnson*, 795 F.3d 1170, 1174 (9th Cir. 2015) (holding that age difference of less than ten years between terminated employee and replacement was presumptively insubstantial).  In 2020, Plaintiff was 53 years old, ECF No. 36 ¶ 2, whereas Pua'a was 46, *id.* ¶ 49.  Thus, their age difference is insubstantial, and Plaintiff has presented no evidence that Defendant considered Plaintiff's age to be significant.  *See Straub v. County of Maui*, CIV. NO. 17-00516 JMS-WRP, 2019 WL 5088738, at *11 (D. Haw. Oct. 10, 2019) (citing *France*, 795 F.3d at 1174).  In short, Plaintiff cannot make out a prima facie ADEA claim as to the allegedly disparate treatment she received regarding the claimed adverse employment actions aside from termination.

But because Plaintiff has made out a prima facie case under the ADEA as to her termination, the Court turns to the next step of the *McDonnell Douglas* framework.

26

### 2. Although There Is Evidence Of Pretext, No Rational Factfinder Could Conclude That Defendant Terminated Plaintiff Because of Age

Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination — her violation of multiple of Defendant's policies relating to workflow and confidentiality of medical records. *See* ECF No. 35-1 at 23. Plaintiff has not and cannot seriously dispute the legitimacy of Defendant's reasons. *See Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1118 (9th Cir. 2011) ("We agree with the district court that [the plaintiff's] multiple violations of company policy could constitute a legitimate reason for terminating her employment."); *Markell*, 2009 WL 3334897, at *9. But Plaintiff argues that Defendant's reasons are pretextual. ECF No. 44 at 17.

"[A] plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang*, 225 F.3d at 1127 (citation omitted). To demonstrate pretext by circumstantial evidence, a plaintiff must present "specific and substantial" evidence of pretext. *France*, 795 F.3d at 1175; *see Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998). But, the Ninth Circuit has also "repeatedly held that it should not take

27

much for a plaintiff in a discrimination case to overcome a summary judgment motion." *France*, 795 F.3d at 1175 (citations omitted).

The Supreme Court has also clarified the burden-shifting framework and its relation to proof at trial in age discrimination cases. *See Reeves*, 530 U.S. at 147–49. While *Reeves* addressed "the kind and amount of evidence necessary to sustain a jury's verdict that an employer unlawfully discriminated on the basis of age," *id.* at 137, it is nonetheless instructive for summary judgment as well, *see id.* at 150 (noting that the standard for Federal Rule of Civil Procedure 50 motions for judgment as a matter of law in a jury trial mirrors that for a motion for summary judgment). The Supreme Court held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148 (emphasis added). The Supreme Court continued:

> This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Id.* (citations omitted).

28

Plaintiff has not offered direct evidence that age discrimination motivated Defendant's adverse employment actions.  She cites one remark in her concise statement of fact, that "[y]ou all learn differently . . . [Puaʻa] learns faster," ECF No. 45 ¶ 30, but does not rely on this comment in her opposition.  Regardless, the single statement is insufficient direct evidence to raise an inference of pretext.  Even reading the foregoing comment as relating to Plaintiff's age, it was not tied to any adverse action against Plaintiff.  *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918–19 (9th Cir. 1996) (holding that ambiguous comment not tied to employee's layoff was "insufficient evidence to raise a genuine issue of fact as to whether the actual reason was a discriminatory one").  Thus, Plaintiff must demonstrate circumstantial evidence of pretext.

As to circumstantial evidence, Plaintiff argues that Defendant's articulation for terminating her was pretextual for four reasons.  First, she cites to the temporal proximity between her reporting Spencer for the expired vaccine incident and her termination — 42 days.  *See* ECF No. 44 at 17.  Second, she highlights that Defendant had not filed any RL6 reports against her between her start date and when she reported Spencer, and that Defendant only began filing reports against Plaintiff after she had reported Spencer.  *See id.* at 18.  Additionally, Plaintiff directs the Court to the positive reviews she received from Defendant just prior to when she reported Spencer.  *See id.*  Third, Plaintiff claims that Defendant never

notified her about three of the corrective actions Spencer took against her, *see id.*, as evidenced by her lack of signature on the forms, *see* ECF No. 45-8, and the fact that when she would refuse to sign something, she would write "refused to sign" on the form, *see* ECF No. 45-18.  Fourth, Plaintiff argues that two of Defendant's executives stated inconsistent reasons for Plaintiff's termination.  *See* ECF No. 44 at 18–19.

Defendant first argues that Plaintiff's claims of pretext are insufficient to defeat the Motion because Defendant terminated another employee "for violating the same HIPAA policy as Plaintiff."  ECF No. 35-1 at 25.  The Court notes, however, that the other employee's conduct and Plaintiff's were not identical.  The other employee committed a "[b]reach of electronic patient health information," and refused to participate with the IT department during the investigation.  ECF No. 36-38 at 2–3.  Further, Defendant emphasizes that the other employee was older than Plaintiff, *see* ECF No. 36 ¶ 48, but why that fact helps Defendant is unclear.  Evidence that a similarly-aged employee was fired for similar conduct as Plaintiff could suggest that Defendant was trying to get rid of all of the older employees.  In contrast, evidence of a younger person being terminated for similar conduct would be more indicative of a lack of age discrimination.

In reply, however, Defendant persuasively assails Plaintiff's proffered circumstantial evidence of pretext, as discussed below.

> **a.    The Temporal Proximity Between The Reporting And Termination And Plaintiff's Clean Pre-Reporting Employment Record**

The Court concludes that Plaintiff has raised a genuine issue as to whether Defendant's articulated reason for the termination was the real one.  But Plaintiff's problem is that the evidence does not raise a reasonable inference of age discrimination as opposed to whistleblower retaliation.

In essence, Plaintiff's first two arguments of pretext are that things were going relatively well for Plaintiff prior to reporting Spencer on September 2, 2020, and then everything changed.  *See* ECF No. 44 at 17–18.  Prior to that date, there had been no RL6 reports lodged against Plaintiff, but after that date Spencer filed a flurry of reports.  *See id.*  The obvious implication of Plaintiff's argument is that Spencer, and in turn Defendant, began retaliating against her for reporting the expired vaccine incident.  Whether that is true or not bears no relation to Plaintiff's age as there is nothing in the record that suggests that September 2, 2020 reporting is relevant to Plaintiff's age or Defendant's treatment of her because of her age. And the only evidence that Plaintiff provides that raises any doubt about Defendant's motives relates to that date.

Indeed, Plaintiff's evidence of pretext is specifically related to the change in relationship between Plaintiff and Defendant after she reported Spencer.  By relying on the temporal proximity and change in relationship between her alleged

protected activity and her termination, Plaintiff cabins the suggestive power of her evidence to the whistleblowing context.  To illustrate, imagine a scenario where Plaintiff had never reported Spencer for the expired vaccine incident, but where Spencer still filed the September and October RL6 reports against Plaintiff.  In such a world, evidence of Spencer's flurry of reports against Plaintiff would not raise any specific or substantial suggestion of pretext or ulterior motive.  The timing and frequency of Spencer's reports against Plaintiff are not suspicious in the abstract — only when they are considered against Plaintiff's alleged whistleblowing do they raise questions about Defendant's explanation for Plaintiff's termination.  In other words, if Plaintiff had not brought an HWPA claim here and only alleged age discrimination, the timing of Spencer's reports would not present sufficient evidence of pretext to defeat summary judgment.

Plaintiff basically concedes as much.  "Plaintiff contends that her termination *could have been partially motivated* by discriminatory animus." *Id.* at 17 (emphasis added).  She argues that "[r]egardless of whether her termination was motivated primarily by age discrimination or retaliation in violation of the whistle-blower statute, the reasons proffered by Defendant for her termination are pretextual." *Id.*  At the hearing, defense counsel explained that as to Plaintiff's termination, she is pursuing a mixed-motivation theory.  But the Supreme Court has plainly held that the ADEA, unlike Title VII, does not authorize a mixed-

motive age discrimination claim.  *See Gross*, 557 U.S. at 175; *see also Shelley*, 666 F.3d at 607 (describing *Gross*).  Or, as the Ninth Circuit has summarized *Gross*'s holding, "the ADEA, which . . . used 'because of' to indicate causation, did not permit mixed-motive claims because 'the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor.'"  *Murray v. Mayo Clinic*, 934 F.3d 1101, 1106 (9th Cir. 2019) (quoting *Gross*, 557 U.S. at 174).  "In short, 'there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age.'"  *Harris v. County of Orange*, 902 F.3d 1061, 1072 (9th Cir. 2018) (quoting *Hazen Paper Co.*, 507 U.S. at 609) (footnote and other citations omitted).[3]  Or, as another judge in this district has explained:

> [A] plaintiff must do more than "produce some evidence that age was one motivating factor in [an employment] decision"; a plaintiff must show, at the summary judgment stage, that a reasonable trier of fact could conclude, by a preponderance of the evidence, that the plaintiff would not have been fired but for impermissible age discrimination.

*Parris*, 979 F. Supp. 2d at 1076 (citing *Scheitlin v. Freescale Semiconductor, Inc.*, 465 F. App'x 698, 699 (9th Cir. 2012)) (brackets and other citation omitted).

---

[3]  Contrast the standard in private-sector cases under 29 U.S.C 623(a) with the federal-sector provision of the ADEA, which the Supreme Court has held does not require but-for causation.  *See Babb v. Wilkie*, 589 U.S. ___, 148 S.Ct. 1168, 1172 (2020) ("The plain meaning of the statutory text shows that age need not be a but-for cause of an employment decision in order for there to be a violation of § 633a(a).")

In sum, the Court concludes that this is one of those situations, as described in *Reeves*, when "although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory" as to her age. *Reeves*, 530 U.S. at 148.  In effect, what is before the Court is evidence sufficient to create a triable issue as to whether Defendant's explanation was pretext for one potentially discriminatory reason (targeting a whistleblower), but which is not indicative of pretext for another improper reason (age discrimination).  *See Graulich v. Rabobank Nat'l Ass'n*, Case No. CV 11-02288 DMG (Ex), 2012 WL 12894746, at *5–6 (C.D. Cal. July 13, 2012) (concluding that evidence of pretext sufficient to defeat summary judgment on whistleblowing claim was insufficient evidence of pretext on age discrimination claim).  To clarify, the Court is not requiring Plaintiff to demonstrate additional evidence of discrimination beyond her prima facie case and evidence of pretext.  *See Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1097 n.12 (9th Cir. 2005) ("The Supreme Court needed to make this explicit in *Reeves* because some lower courts had effectively held that summary judgment was *always* appropriate unless the plaintiff presented not only a prima facie case and evidence sufficient to show that the employer's proffered legitimate rationale was pretextual, but *also* additional evidence sufficient to show actual discrimination." (citation omitted)).  Nor is the Court suggesting that

discriminatory motives are mutually exclusive.  The Court merely concludes that Plaintiff's pretext evidence is context-specific and suggests only one of the two alleged forms of discrimination as a reason for Plaintiff's termination, *i.e.*, that Plaintiff blew the whistle.  *Cf. Rader v. Napolitano*, 552 F. App'x 617, 618 (9th Cir. 2013) (affirming summary judgment for employer where employee's "evidence raised only a 'weak' issue of fact and the record contain[ed] other, 'abundant and uncontroverted independent evidence that no discrimination had occurred'" (quoting *Reeves*, 530 U.S. at 148)).

### b.    The Three Corrective Action Forms

As to Plaintiff's third illustration of pretext evidence, there is a factual dispute about whether Defendant showed Plaintiff the three corrective action forms, but there is no dispute that Plaintiff engaged in the allegedly violative conduct.  For example, Plaintiff admits that Spencer verbally counseled her about her alleged breach of HIPAA policy when she left her computer screen unlocked on September 17, 2020.  *Compare* ECF No. 36 ¶¶ 35, 36, *with* ECF No. 45 at 2 (admitting facts).  Likewise, Plaintiff admits that Spencer reported that Plaintiff had given a patient a vaccine before getting the patient's signature and had previously given a minor a vaccine on August 20, 2020 without obtaining the guardian's signature.  *Compare* ECF No. 36 ¶ 39, *with* ECF No. 45 at 2 (admitting facts).  Plaintiff also admits that she received a written warning for her vaccine

administration.  *Compare* ECF No. 36 ¶ 40, *with* ECF No. 45 at 2, *and* ECF No. 49 (neither admitting nor denying Defendant's fact number 40 even though the Court gave Plaintiff and Defendant a chance to supplement their concise statements to respond properly to all facts).[4]  Regardless, even if Plaintiff did not see or sign the corrective action forms, she does not challenge the conduct described in the forms.  Such evidence does not give rise to an inference of pretext.

### c.    The Claimed Inconsistent Reasons for Termination

As to the Plaintiff's fourth example of pretext evidence, she argues that the CEO testified that the sole reason that Plaintiff was terminated was because she accessed her own medical information.  *See* ECF No. 44 at 18–19; ECF No. 45-10 at 6–7 (deposition testimony).  Plaintiff then contrasts the CEO's testimony with Project Manager Terry Radi's testimony that Plaintiff was terminated for violating six of Defendant's policies, including accessing her own medical records.  *See* ECF No. 44 at 18–19; ECF No. 45-5 at 3 (deposition testimony).  But the record indicates that there is no inconsistency between the testimonies because later in her deposition, the CEO stated that the final incident — accessing the medical records — "all by itself, could qualify as termination, but wasn't by itself, was already

---

[4] The Court directed the parties to supplement each's concise statement of facts to properly respond to the other's asserted undisputed facts.  *See* ECF No. 48.  Both filed supplemental responses.  *See* ECF No. 49 (Plaintiff); ECF No. 50 (Defendant).

compounded with a  number of other incidences that were documented."  ECF No. 47-4 at 3.  Even crediting Plaintiff's argument that the CEO testified that the sole reason was Plaintiff's access of her own medical records, that is not incompatible with Radi's testimony that simply lists additional reasons.  *See Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733–34 (7th Cir. 2001) (pretext not shown where an employer "simply supplemented its explanations" for the termination); *cf. Nidds*, 113 F.3d at 918 (explanations not incompatible and therefore not "shifting").  Further, the reasons listed in the termination letter support the two executives' testimony.  *See* ECF No. 36-21.  The termination letter first lists the six policy violations, and then details Plaintiff's access of her own medical records. *See id.* at 2.  Thus, Plaintiff's fourth argument fails to raise a dispute as to pretext.

**B.     State Law Claims**

Because the Court grants Defendant's Motion as to the ADEA claim, only state law claims remain.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims.

Courts may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Courts declining to exercise supplemental jurisdiction "must undertake a case-specific analysis to determine whether declining supplemental jurisdiction 'comports with the underlying objective of most sensibly accommodating the values of economy, convenience, fairness and comity.'"  *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (citation and brackets omitted); *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997).  When a "'case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'"  *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)) (alteration in original).

Here, considerations of judicial economy, convenience, fairness, and comity weigh in favor of declining jurisdiction over Plaintiff's state law claims.  The Court granted summary judgment on the only claim over which it had original jurisdiction.  There are no other factors compelling the Court to deviate from the common practice of declining supplemental jurisdiction when no federal claims remain.  Even before the Court addressed the ADEA claim, the bulk of this case

was premised on state law.  Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims and dismisses those without prejudice to Plaintiff raising them in state court.[5]

## IV.   Conclusion

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment, ECF No. 35, as to Plaintiff's ADEA claim and declines to exercise supplemental jurisdiction over the remaining state law claims.  No claims remain.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, May 2, 2022.



Jill A. Otake
United States District Judge

---

Civil No. 21-00170 JAO-KJM; *Lorna Keliipuleole v. Molokai Ohana Health Care Inc.*; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

[5] Hawaii's statutes of limitations relating to Plaintiff's state law claims will have been tolled during the pendency of this proceeding.  *See Artis v. District of Columbia*, 583 U.S. ___, 138 S.Ct. 594, 598 (holding that "[28 U.S.C.] § 1367(d)'s instruction to 'toll' a state limitations period means to hold it in abeyance, *i.e.*, to stop the clock").